IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3030-FL

| | | |
|---|---|---|
| CHRISTOPHER JOHANNE GARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LIEUTENANT STEVEN G. AVERETT, | ) | |
| SERGEANT CURTIS JONES, OFFICER | ) | |
| ANN ROBINSON, OFFICER JACQUES | ) | |
| KENTRELL, OFFICER DOMINIC | ) | |
| HOSE ETTSON, OFFICER T. POTEAT, | ) | |
| OFFICER C. HOLLOWAY, and | ) | |
| OFFICER JEFFREY DROWNS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 35), which was fully briefed. Also before the court are plaintiff's motion for the court to review a decision in the district, <u>Scurlock v. Ryan</u>, No. 5:12-CT-3123-BO (E.D.N.C. June 4, 2012) (DE 68), motion to appoint counsel (DE 69), motion for summary judgment (DE 70), motion for copies (DE 71), and motion for mediated settlement conference (DE 72). Defendants did not respond to plaintiff's motions. In this posture, the issues raised are ripe for adjudication.

**STATEMENT OF THE CASE**

On February 4, 2013, plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against defendants Lieutenant Steven G. Averett ("Averett"), Officer Jeffrey W. Drowns ("Drowns"), Dominic Hose Ettison ("Ettison"), C. Holloway ("Holloway"), Curtis Jones

("Jones"), Jacques Kentrell ("Kentrell"), T. Poteat ("Poteat"), and Ann Robinson ("Robinson"), alleging that defendants used excessive force against him during a prison cell extraction in violation of the Eighth Amendment to the United States Constitution. On October 10, 2013, the court conducted a frivolity review of plaintiff's action. The court determined that plaintiff's complaint was unclear, and directed him to particularize his allegations.

On October 21, 2013, plaintiff filed his particularized pleading. The court thereafter dismissed plaintiff's action against Ettson for insufficient factual support, but allowed plaintiff to proceed with his excessive force claim against the remaining defendants. In support of his excessive force claim, plaintiff alleged that, in the course of a March 10, 2012, cell extraction, he was "hit in the mouth wit[h] a black object by an unknown officer in front of him and grabbed by the legs by several other officers and forced to the ground causing plaintiff to suffer an injured left leg."[1] (Am. Compl. (DE 12), p. 1.) Plaintiff further stated that defendants Poteat and Drowns "were the officers who had [plaintiff's] legs which could have caused [plaintiff's] left leg to get injured." (Id.) Finally, plaintiff stated that defendants "Holloway [and] Kentrell's rol[e] was limited to simple blows here and there during the process of putting on the restraints but nothing seriously harmful to the face or groin area." (Id. p. 2.)

On December 2, 2013, plaintiff filed a motion to amend his complaint to supplement his allegations and to re-assert an Eighth Amendment excessive force claim against previously dismissed defendant Ettson. In particular, plaintiff asserts that Ettson administered "excessive blows . . . while [plaintiff] was on the floor being restrained." (Am. Compl. (DE 17), p.2.) The

---

[1] Plaintiff states in his complaint that defendants Jones and Averett were the only officers holding black objects at the time of the alleged incident. (Am. Compl. (DE 12), p. 1.)

court subsequently granted plaintiff's motion to amend and re-instated Ettson as a defendant in this case.

On February 7, 2014, defendants Averett, Drowns, Jones, Kentrell, and Robinson filed a motion for summary judgment, arguing that plaintiff cannot establish a constitutional violation. In the alternative, defendants assert the affirmative defense of qualified immunity. The motion was fully briefed. The court later granted Ettson leave to join defendants' pending motion for summary judgment.

Plaintiff subsequently filed a motion for default, motion for a temporary restraining order, motion to appoint counsel, motion to amend, a motion to supplement his response to the pending motion for summary judgment, and motion to compel. In response, defendants filed a motion for a protective order, which was fully briefed.

On May 21, 2014, the court entered an order denying as futile plaintiff's motion to amend and denying plaintiff's motions for default, for a temporary restraining order, to appoint counsel, and to compel. The court granted defendants' motion for a protective order, as well as plaintiff's motion to supplement his response to the pending motion for summary judgment. The court also dismissed plaintiff's action against defendants Holloway and Poteat without prejudice pursuant to Federal Rule of Civil Procedure 4(m). Finally, the court directed defendants to supplement their pending motions for summary judgment by filing all of plaintiff's medical records related to the instant alleged excessive force incident, as well as any incident reports related to the alleged incident. The parties complied with the court's order, and supplemented the pending motion for summary judgment.

3

On August 11, 2014, plaintiff filed a motion requesting that the court review a case, Scurlock v. Ryan, No. 5:12-CT-3123-BO (E.D.N.C. June 4, 2012). Plaintiff subsequently filed a motion to appoint counsel, motion for summary judgment, motion for copies, and motion for a mediated settlement conference.

**STATEMENT OF THE UNDISPUTED FACTS**

The following is a summary of the undisputed facts in this action. Plaintiff, a state inmate, was housed at Polk Correctional Institution's ("Polk") Hcon unit when this cause of action arose on March 10, 2012. (Def.s' Ex. A-3, p.1.) At the time of the alleged incident, plaintiff had sixty-eight (68) disciplinary infractions.[2] (Id. Ex. B (DE 36-6), pp. 1-3.)

On March 10, 2014, at approximately 1:06 p.m., plaintiff set a small fire in his cell. (Id. Ex. A-3, p.1.) In response, defendants Averett and Jones went to plaintiff's cell and brought along defendant Robinson to video tape the encounter. (Def.s' Ex. A-1T 1:04:25.) The officers first directed plaintiff to place his hands through the food service trap, but plaintiff did not comply. (Id. T 1:05:03.) Jones then opened plaintiff's food service trap and pulled out part of plaintiff's shower curtain which was obstructing the trap. (Id. T 1:05:15-20.) The officers next deployed a short burst of OC pepper spray into plaintiff's cell through his food service trap. (Id. T 1:05:15-20.) Plaintiff did not submit to restraints, and the officers left plaintiff's cell. (Id. T 1: 05:20-38.)

The video resumes at 1:43:20 p.m. when defendants Averett, Jones, and Robinson return to plaintiff's cell. (Id. T 1:43:20.) The officers noted on camera that soapy water was flowing out of plaintiff's cell and into the hallway. (Id.) Defendants Averett and Jones twice directed plaintiff to

---

[2] Since the date of the incident plaintiff accumulated an additional twenty-eight (28) disciplinary infractions. (Id. Ex. B (DE 36-6), pp. 1-2.)

4

uncover his window, which was covered with newspaper. (Id. T 1:43:28, 57.) Plaintiff did not respond. Defendants Averett and Jones again left plaintiff's cell. (Id. T 1:44:22.)

After leaving plaintiff's cell, defendants Averett and Jones went to the location where an anticipated use of force ("AUOF") team had assembled. (Id. T: 1:45:02.) Defendant Jones then described the circumstances which necessitated the assembly of the AUOF team, which included the fact that plaintiff set a fire in his cell and refused direct orders to submit to restraints. (Id. T 1:45:11-1:45:35.) Jones additionally identified the officers involved in the AUOF and their respective assignments which included: (1) Holloway as the electronic shield operator; (2) Poteat as the upper right flank; (3) Drowns as the upper left flank; (4) Kentrell as the lower right flank; (5) Ettson as the lower left flank; (6) Robinson as the camera operator; and (7) Jones as the supervisor. (Id. 1:45:35-1:47:13.) After the officers identified themselves, Jones advised the AUOF team that plaintiff's cell window was covered and that plaintiff's cell and the hallway floor were flooded with soapy water. (Id. T 1:47:11-1:47:22.) The AUOF team then walked to plaintiff's cell. (Id. T 1:47:23-1:47:59.) The video reflects that plaintiff's cell window remained covered when the AUOF team arrived at plaintiff's cell. (Id. T 1:48:30.) The officers began by directing plaintiff to submit to restraints. (Id. T 1:48:33.) Plaintiff was unresponsive. The officers then opened plaintiff's food service trap and administered OC pepper spray into plaintiff's cell. (Id. T 1:48:48-49.) After administering the pepper spray, the officers closed the food service trap and moved away from plaintiff's cell door for a period of approximately four minutes. (Id. T 1:49:02-1:53:21.)

After returning to plaintiff's cell, defendants Averett and Jones gave plaintiff three direct orders to submit to restraints. (Id. T. 1:53:48, 1:54:05, 1:54:07.) Plaintiff did not respond.

5

Jones next ordered Holloway to demonstrate the electronic stun shield, and Holloway complied. (Id. T 1:54:26-31.) Averett or Jones then asked the control booth to open plaintiff's cell door. (Id. T:1:54:35.) As the door opened, plaintiff rushed out of his cell using his mattress as a shield and pushed toward the AUOF team. (Id. T 1:54:43.) Holloway used the electronic stun shield[3] to push plaintiff back into his cell, and the AUOF team struggled with plaintiff in the doorway of plaintiff's cell. (Id. T 1:54:46-49.) The officers then continued to struggle to get plaintiff down to the ground. (Id. T 1:54:54-1:55:00.)

Once the AUOF officers got plaintiff face down onto the floor, plaintiff continued to struggle. (Id. T 1:55:00-1:55:20.) Defendant Jones then directed Holloway to use the electronic stun shield on plaintiff, and Holloway deployed the electronic stun shield for approximately eight seconds. (Id. T 1:55:20-28.) At that point, plaintiff stopped resisting and the officers applied shackles to plaintiff's hands. (Id. T 1:55: 30-1:56:11.) The AUOF team then lifted plaintiff, applied a face net, moved him to a corner, and applied full restraints. (Id. 1:56:16-2:00.)

After plaintiff was secured in full restraints, the AUOF team escorted plaintiff to the medical unit. (Id. T 2:00-2-2:01:12.) As plaintiff was being escorted down the hallway to the medical unit he repeatedly stated, "call me inmate beast." (Id. T 2:00:22-2:01:12.)

When plaintiff arrived at the medical unit, two nurses examined him. (Id. T 2:00:12.) In the course of the examination, plaintiff denied being pepper sprayed, stating that the officers sprayed the floor. Plaintiff, however, did complain of a chipped tooth and left knee pain. (Id. T 2:01:25; 2:07:20.) The nurses noted that plaintiff's eyes and the side of his face were reddened. (Def.s' Supp. Resp. (DE 59-1) p. 29.) The nurses also noted that plaintiff had red spots on his back,

---

[3] The electronic stun shield was not activated when the AUOF team entered plaintiff's cell.

abrasions on the top of his head, and a chipped tooth. (Id.) The nurses, however, did not observe any blood. (Id.) Finally, the video reflects that plaintiff was dressed in multiple layers of clothing. (Def.s' Ex. A-1 T 2:07:50-53.)

After plaintiff's medical examination was complete, the officers escorted him to an observation cell adjacent to the nurse's station. (Id. T 2:09:27-2:10:41.) The video concluded once plaintiff was secured in the observation cell.

Polk medical staff later determined that plaintiff required outside medical treatment for his left knee, and Polk correctional staff transported plaintiff to Durham Regional Hospital. (Def.s' Supp. Resp. (DE 59-1), pp. 17, 30.) At Durham Regional Hospital, the medical staff made the following notation: "left knee has no erythema, no swelling, mild-moderate tenderness and no abrasions/lacerations." (Def.s' Supp. Resp. (DE 59-4), p. 17.) Medical staff also conducted electromagnetic radiation ("x-ray") testing on plaintiff's left knee, and the results reflected no fracture or subluxation. (Id. p. 18.) Medical staff ultimately diagnosed plaintiff with knee strain and provided him a knee immobilizer. (Id.)

As for plaintiff's alleged chipped tooth, plaintiff had radiographs of his chin area after the alleged use of force, and the results revealed no fracture. (Id. p. 30.) Plaintiff, however, continued to complain of jaw pain related to the instant incident, and received treatment for potential difficulties with a pre-existing jaw condition and his wisdom teeth. (Id. pp. 32, 39, 47-49, 53, 56.)

After plaintiff's cell extraction on March 10, 2012, he was charged administratively with disobeying an order. (Def.s' Ex. A-3, p. 1.) Plaintiff pleaded guilty to the charged disciplinary offense. (Id.)

7

**DISCUSSION**

A.      Motion for the Court to Review Case

Plaintiff requests that, in the course of its review of the pending dispositive motions, the court consider another alleged excessive force action pending in this court against the instant defendants, Scurlock v. Ryan, No. 5:12-CT-3123-BO (E.D.N.C. June 4, 2012). The court receives and has reviewed the filing in supplement to plaintiff's motion for summary judgment and in defense of defendants' motion. As such, no separate, justiciable issue remains, and the motion is DENIED as moot.

B.      Motion to Appoint Counsel

Plaintiff has filed several motions to appoint counsel in this case. As stated in prior court orders denying plaintiff's requests for counsel, there is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for pro se civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982)); see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him.") Plaintiff's claim is not complex. Further, plaintiff has failed to demonstrate that his case is

8

one in which exceptional circumstances merit appointment of counsel. Rather, plaintiff's pleadings demonstrate that he is capable of proceeding *pro se*. Thus, the court properly determined that appointment of counsel is not warranted for this action, and plaintiff's second motion to appoint counsel is DENIED.

C.      Motion for Copies

The court next turns to plaintiff's motion requesting free copies of all of the documents filed in this case. The documents plaintiff requests are within the custody of the Clerk of Court's office. Thus, plaintiff must make his requests directly to the clerk's office along with payment, at the rate of fifty cents (.50¢) per page, for copies of the documents he requests. The court notes that the dispositive motion deadline in this case has passed and defendants' pending dispositive motion has been fully briefed. Plaintiff sets forth no explanation as to his alleged need for a copy of all of the documents filed in this case. Based on the foregoing, plaintiff's motion is DENIED.

D.      Motion for Summary Judgment

   1.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party

9

for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. . . . In qualified immunity cases, [such as the instant case] this usually means adopting . . . the plaintiff's version of the facts." Scott v. Harris, 550 U.S. 372, 376 (2007) (internal quotations, alterations, and citations omitted). That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. at 380. In particular, where, as in this case, the record contains an unchallenged videotape capturing the events in question, the court must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape. See id.

    2.    Analysis

In support of their motion for summary judgment, defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555

10

U.S. 223, 236 (2009).  The court first determines whether defendants violated plaintiff's Eighth Amendment rights by using excessive force against him.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  The excessive force inquiry has an objective prong and a subjective prong.  Under the objective prong, a plaintiff must establish that the forced used was "nontrivial."  Wilkins v. Gaddy, 559 U.S. 34, 39 (2010).  In this case, defendants focus their analysis on the subjective prong of the Eighth Amendment test.  Accordingly, the court likewise focuses its inquiry on the subjective prong of the Eighth Amendment test.

To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 297 (1991).  For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain."  Whitley, 475 U.S. at 322.  Although "[a]n express intent to inflict unnecessary pain is not required" to establish an excessive force claim under the Eighth Amendment, an inmate must show that the defendant inflicted unnecessary and wanton pain and suffering.  Id. at 319.  In determining whether a prison official has acted with "wantonness," relevant factors include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response.  Whitley, 475 U.S. at 321; Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Applying the Whitley factors set forth above to the instant use of force incident, the court finds plaintiff is unable to satisfy the subjective prong of the Eighth Amendment test–whether

11

defendants acted with wantonness in the infliction of pain. With respect to the need for force factor, the record reflects that plaintiff set a small fire in his cell, blocked his food service trap, covered his windows, and flooded his cell with soapy water. The record additionally reflects that plaintiff refused to comply with officers' repeated direct orders to voluntarily submit to restraints. Once defendant Jones ordered the Hcon control booth to open plaintiff's cell door, plaintiff pushed out of his cell toward the AUOF team using his mattress as a shield. The video tape of the incident reflects that plaintiff continued to resist the AUOF team's efforts to bring plaintiff to the floor so that the team could apply restraints. Based upon the evidence, the court finds that this Whitley factor weighs in favor of defendants and against plaintiff.

The court next considers the relationship between the need for force and the amount of force that was used. On the date in question, the AUOF team was confronted with a non-compliant and violent inmate. Although plaintiff alleges that he voluntarily submitted to restraints, the video clearly contradicts plaintiff's statement in that plaintiff can be seen charging out of his cell pushing his mattress toward the officers. The video further reflects that plaintiff continued to resist the AUOF team until Holloway deployed the electronic shock shield.

As for Holloway's use of the electronic shock shield, the video reflects that the single short deployment of the electronic shock shield was done in an effort to get plaintiff to stop resisting and to submit to restraints. See, e.g., Bryant v. Johnson, No. 7:11-cv-00075, 2012 WL 4458214, at *6 (W.D. Va. Aug. 21, 2012) (finding no excessive force where electronic shock shield was deployed to coerce an inmate into being weighed); Collins v. Scott, 961 F. Supp. 1009, 1016–17 (E.D. Tx. 1997) (noting no constitutional violation where correctional officers used a shock shield when an inmate refused to submit to a strip search because the shield was the least restrictive means of

12

maintaining control of the prisoner). The court further notes that plaintiff has not alleged that the deployment of the electronic shield was done for any purpose other than to restore order.

Additionally, contrary to plaintiff's assertion otherwise, the video reflects that the AUOF team did not assault plaintiff once restraints were applied. The video further contradicts plaintiff's allegation that Jones or Averett hit him in the face with a black object as the video shows that Jones and Averett did not physically participate in the cell extraction.[4] Moreover, the video reflects a rapid sequence of events during which the AUOF team clearly is attempting to regain control over the situation, and the court accords deference to the AUOF team members' judgment under such circumstances. See, Whitley, 475 U.S. at 321 ("When the ever-present potential for violent confrontation and conflagration, . . . ripens into *actual* unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators . . . carries a special weight.") (internal quotations and citations omitted); see also, Crayton v. Adams, No. 7:13-cv-00078, 2013 WL 5918508, at *1 (W.D. Va. Nov. 1, 2013) ("Federal courts are poorly equipped to second guess the split second security decisions of prison officials.") Accordingly, the court finds that the amount of force used did not outweigh the need for the force, and this Whitley factor also weighs in favor of defendants and against plaintiff.

The court next considers the third Whitley factor, the extent of any threat posed by plaintiff to the staff or other inmates, as reasonably perceived by defendants based upon the facts known to them at the time. Plaintiff, as an Hcon inmate with multiple disciplinary infractions, posed a threat to both staff and institutional security because he started a fire in his cell and refused to obey repeated direct orders to submit to restraints. Plaintiff further posed a threat to the AUOF team

---

[4] Jones and Averett participated in the cell extraction only as supervisors and did not participate in the physical removal of plaintiff from plaintiff's cell.

13

because he charged the team using his mattress as a shield when Polk staff attempted to remove him from his cell to apply restraints. Accordingly, the third <u>Whitley</u> factor weighs in defendants' favor and against plaintiff.

Finally, the court considers the fourth <u>Whitley</u> factor, whether defendants made any efforts to temper the severity of a forceful response. The video in this case reflects that defendants made repeated efforts to get plaintiff to voluntarily submit to restraints. The record further reflects that plaintiff resisted defendants' efforts to regain control until after the shock shield was deployed. Once plaintiff was subdued and placed in restraints, the officers calmly brought plaintiff to his feet and escorted him to the medical unit. As stated, the video contradicts plaintiff's assertions that any defendant struck plaintiff once plaintiff was restrained. Based upon the foregoing, viewing the evidence in the light most favorable to plaintiff, the court finds that the fourth <u>Whitley</u> factor weighs in favor of defendants and against plaintiff.

Viewing the evidence in the light most favorable to plaintiff, the court finds that each of the <u>Whitley</u> factors weigh in favor of defendants and against plaintiff. Accordingly, the court finds that defendants did no use force wantonly and maliciously for the purpose of causing harm, and plaintiff is unable to establish a constitutional violation. Thus, defendants are entitled to qualified immunity. As a result, defendants' motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

## CONCLUSION

Based upon the foregoing, the court rules as follows:

(1) Plaintiff's motion to review <u>Scurlock v. Ryan</u>, No. 5:12-CT-3123-BO (E.D.N.C. June 4, 2012) (DE 68) is DENIED as MOOT;

(2) Plaintiff's motion to appoint counsel (DE 69) is DENIED;

(3) Plaintiff's motion for copies (DE 71) is DENIED;

(4) Defendants' motion for summary judgment (DE 35) is GRANTED;

(5) Because the court granted defendants' motion for summary judgment, plaintiff's motion for mediated settlement conference (DE 72) is DENIED as MOOT;

(6) Plaintiff's motion for summary judgment (DE 70) is DENIED; and

(7) The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 23rd day of September, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge